SPECTOR, Chief Judge.
Appellant seeks reversal of an order adjudging him to be in contempt for violating the terms of a restraining provision in a divorce decree.
The primary question raised by appellant is the sufficiency of the evidence to support the chancellor’s finding that appellant “failed and refused to abide by the restraining order enjoining him from harming the plaintiff [appellee former wife] as set forth in the Final Judgment of Divorce. * * * ”
The divorce decree provided that the mother had custody of their five minor sons, ranging in ages from toddlers to twelve years. The father was given reasonable visitation privileges during daylight hours “only so long as he properly demeans himself and is sober”. Broad visitation privileges were also accorded to the paternal grandparents. The decree also contained a provision which stated that appellant “ * * * is hereby prohibited and restrained from interfering with or in anywise molesting plaintiff”.
The incident which precipitated the contempt order occurred nearly two years after the divorce on a night just before Christmas when appellant and his new wife dropped by appellee’s house to inform her that he could not pick up the children that evening because he had to work. When he went in the house to explain to appellee why he had to wait until the next day before he could take the children, appellee told him that she wasn’t going to let the children go at all. Appellee’s recollection of events terminates at this point since she testified that the next thing she remembers was sitting on the couch crying and holding her hurt face in her hand. As a result of the blow she received, she experienced a loss of memory and was required to spend two weeks in the hospital.
Appellee’s version of the incident is simply that appellant became enraged and struck her a solid blow to the face with his fist over her refusal to agree to the visitation for the next day. Having experienced a loss of memory, she was unable to testify directly that appellant struck her. Instead *592 she relies on his belligerent and threatening manner immediately before she was struck, as well as the statements by her children who, although testifying at the hearing in corroboration of appellant’s version, also testified that on the night of the incident they had told others that their daddy hit their mother. Appellant’s version of the affray and explanation of appellee’s injuries was that as he was discussing picking up the children on the morrow, he was standing in the doorway with his hand in the doorjamb and that appellee slammed the door shut on his thumb and he shoved the door open which hit her, causing her to fall backwards and hit herself on a nearby dryer. The oldest son, Jerald, age 12, completely corroborated the father’s story but also admitted that on the night in question he might have said that appellant hit her. On cross-examining Jerald as to this variance, appellee’s counsel asked:
“Q. And are you telling the same story that you told her that first night?
“A. No, sir, that first night I wasn’t feeling good that night, I had been sick that day, and that’s what I thought.
“Q. So, if you told her that night that your father hit your mother with his fist, you were telling a story then?
“A. No, sir.”
Deryl, the ten-year-old son, testified that he heard his brother Jerald, the preceding witness, tell his mother that appellant had hit her. Another child, Michael, seven years old, testified that the first he saw when he arrived at the scene was his mother lying down on the floor and did not see the actual blow himself. He did testify however that he told a third-party family friend when she arrived on the scene the following:
“A. I told her that one of the twins was out, I asked the twin what happened, and he said that my daddy hit my mama.”
Michael continued his testimony by stating:
“A. My daddy balled up his fist like this, and he did like that, and he hit her. (indicating)”
Appellee’s contention that appellant struck her with his fist, as may reasonably be inferred from the foregoing testimony of the children, is of course in conflict with appellant’s version. Appellant contends however since his version is supported by direct or affirmative evidence, it should have been believed by the trier of fact rather than appellee’s version, which in the main rests on a series of recitations about what the children said to each other and others at or closely after the occurrence of the incident. We disagree.
In light of the circumstances presented by the record on appeal, we think the trial judge could reasonably have inferred from the evidence that appellant struck appellee with his fist. That appellee herself was unable to testify directly as to what happened because she was so stunned by the blow that her memory failed her is no bar to the acceptance of her version since the children’s testimony formed a basis from which the trier of fact could, and did, infer that appellant struck appellee. The reliability of the trial court’s inference in this respect is strengthened by the evidence given by the chief of police, who testified that on the following morning he arrested appellant on a warrant charging him with assault and battery. Having knowledge of appellant’s version that the door was slammed on his right hand, the officer stated that he looked closely at appellant’s hand and noted no marks or bruises on it tending to corroborate appellant’s version. Moreover, the examining physician testified that the history presented to him was that ap-pellee had been hit in the face and that his physical findings were completely compatible with her having been hit in the face with a fist.
Our review of the evidence reveals a close question of fact. There was evidence which, if believed, could have supported a *593 judgment for either of these opposing parties. It is unnecessary to recite the well known principle that conflicts in testimony, including reasonable inferences adducible therefrom, are to be resolved by the trier of fact.
We have considered appellant’s remaining point and find it to be without merit. Accordingly, the order reviewed herein is
Affirmed.
CARROLL, DONALD K., and WIGGINTON, JJ., concur.